## State v. Beair
*[Cite as 2 AOA 303]*

*Case No. WD-89-44*
*Wood County, (6th)*
*Decided March 16, 1990*

R.C. 2919.25
R.C. 2945.71
R.C. 2945.72

*Ms. Kathleen Culkowski, Counsel for Appellant.*

*Mr. Chester H. Marcin, Counsel for Appellee.*

HANDWORK, P.J.

On March 31, 1989, Raymond Beair, appellant, was arrested and charged with domestic violence, a violation of R.C. 2919.25. The basis for the charge was a complaint for domestic violence filed in the Bowling Green Municipal Court and a probable cause affidavit which alleged that appellant had hit his mother in the face, in the back, and had set her hair on fire.

On April 3, 1989, appellant made his first appearance relating to the domestic violence charge in the Bowling Green Municipal Court. Appellant had no counsel. Appellant's mother, the alleged victim, and a family friend appeared in court. Both appellant's mother and the family friend indicated to the judge that a nurse from the hospital where the mother was taken to receive treatment after sustaining injuries called the police, instigating the investigation and subsequent complaint. Both appellant's mother and the family friend also indicated that the mother had spoken with an investigating police officer and had indicated to that police officer that she believed her son needed psychiatric care. The mother had signed the complaint for domestic violence under the mistaken belief that she was signing a document which would result in her son receiving a psychiatric evaluation and subsequent help. Both the mother and the family friend indicated that the mother was distraught that her action had resulted in her son being jailed. Both witnesses made repeated requests to the judge that appellant be provided with psychiatric care. During the course of the proceeding the court made the following statement: "As long as you both understand that the present way that the state law is set up as far as committing people to mental institutions or getting psychiatric help, we are so severely limited now that its just not a good alternative. We can't get people in or they'll go down there for one day and the next day they're out on the street again. So we're stuck with other remedies such as trying to keep people in jail until we can get the thing worked around and get a solution, because I'm concerned about harm to you or somebody else." ·

At the conclusion of the proceedings, a journal entry was filed setting bail at $7,000, ten percent applicable, with two conditions: (1) that appellant have no contact with guns or weapons; and (2) that appellant not engage in threatening harm to two specific individuals. In addition, the entry contained the following statement: "Prob. Officer *Frost* to talk to /l 's atty. (re Y' logical help)".

Appellant made his second appearance in the Bowling Green Municipal Court on April 7, 1989. Once again, appellant's mother and a family friend appeared in court. Both appellant's mother and the family friend again stressed that their main desire was to see that appellant received psychiatric care. At the conclusion of the second proceeding, the court filed a journal entry which stated:

"Prob. Dept. to seek a commitment/evalu. to Toledo Mental Health Center."

"Pearl B (Mother) is willing to sign papers."

"Prob. Off. Report to Court". Appellant was remanded to the jail, with orders for the sheriff to transport appellant to the Toledo Mental Health Center.

After appellant's second court appearance, a second journal entry dated April 25, 1989 was filed by the Bowling Green Municipal Court. The journal entry reflects that the court had received a pre-hospital screening form from the Mental Health Center of Wood County. The court ordered that the public defender's office be appointed as counsel for defendant and ordered a probation officer to contact appellant's family regarding the report the court had received.

Appellant made his third appearance in the Bowling Green Municipal Court on April 28,

1989. This time, appellant was accompanied by counsel from the public defender's office. Appellant was arraigned and entered a plea of not guilty. Counsel for appellant also made a request that the court schedule a trial date. Rather than set a trial date at that time, the court scheduled the case for a review on May 1, 1989. The court also reconsidered the $7,000 bond required for bail, and ordered appellant released on personal recognizance.

On May 1, 1989, the scheduled review of the case was held at the Bowling Green Municipal Court. The court set the case for trial on May 30, 1989, even though appellant's counsel objected on the grounds that the May 8,1989 date exceeded the statutorily-prescribed time limit for a speedy trial. The court journalized its overruling of appellant's objections to the trial date in an entry filed May 3, 1989. This entry was accompanied by a separate decision which stated that the psychiatric evaluations which had been ordered in the April 3 and 7, 1989 journal entries were ordered for the purpose of determining whether the appellant was fit to stand trial. Appellant renewed his objections to the trial date by a written motion to dismiss filed May 10, 1989, which alleged an absolute right to a dismissal due to the violation of appellant's right to a speedy trial. Appellant's motion to dismiss was overruled in a May 11, 1989 journal entry.

The following day, May 12, 1989, the charge against appellant was amended to a charge for aggravated menacing, a misdemeanor of the first degree. Appellant filed a plea of no contest, was found guilty, was sentenced to twenty-eight days in the Wood County Jail, and was placed on one year probation with the condition that appellant not engage in any assault-type offenses. Appellant was given credit for the twenty-eight days already served in the Wood County Jail.

Appellant timely files this appeal, raising one assignment of error. The assignment of error states:

"THE LOWER COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS WHERE DEFENDANT WAS NOT BROUGHT TO TRIAL WITHIN THE LIMITS PROSCRIBED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND SECTION 2945.71 OF THE OHIO REVISED CODE."

Appellant is correct that both the United States Constitution and the Constitution of the State of Ohio guarantee a person charged with a crime a right to a speedy trial. Appellant is also correct in contending that the right to a speedy trial is further protected in Ohio by statutory provisions. R.C. 2945.71 sets forth the time within which a hearing or trial must be held. The provisions of R.C. 2945.71 which are pertinent to this appeal read as follows:

"(B) A person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial:

"* * *

"(2) Within ninety days after his arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days. * * *

"(E) For purposes of computing time under division [ ] * * * (B) * * * of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71 (B) (2), (E).

An application of these statutory provisions to the facts of this case leads to the inescapable conclusion the appellant's trial was not held in a timely manner. Appellant was arrested and charged with a misdemeanor of the first degree on March 31, 1989. Appellant was then held in jail in lieu of bail for twenty-eight days. R.C. 2945.71(E) dictates that the twenty-eight days must be multiplied by three. Therefore, when appellant was released on his own recognizance on April 28, 1989, eighty-four days had already passed. As has already been seen, the provisions of R.C. 2945.71 (B) (2) establish a requirement that persons charged with a misdemeanor of the first degree be brought to trial within ninety days after the arrest of the person. Accordingly, when appellant was released on April 28, 1989 six days remained to bring appellant to trial in a timely fashion. However, the record clearly shows appellant was not brought to trial until fourteen days after his release on his own recognizance. Appellant therefore has established a *prima facie* showing that his right to a speedy trial was denied, and the burden shifts to the state to show that the trial was held in a timely manner due to an extension properly granted by the trial court. *State* v. *McCormick* (1988), 41 Ohio App, 3d 158, 160.

Appellee asserts that the following provision of R.C. 2945.72 applied in this case tolled a portion of the twenty-eight days appellant was held in lieu of bail, and rendered the trial timely:

"The time within which an accused must be brought to trial * * * may be extended only by the following:

"* * * (B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined or any period during which the accused is physically incapable of standing trial." R.C. 2945.72(B).

In support if its assertion, appellee refers this court to the decision filed by the trial court on May 3, 1989. The text of that decision contains the following statement: "During the entire time that the defendant was confined in jail, he was being evaluated to determine if he was mentally competent to stand trial, except for the first few days after his arrest and the last few days after his mental competency report was received and ruled upon by the court." The decision also contained an acknowledgement that earlier statements in journal entries filed by the court did not clearly reflect the psychological evaluation was ordered to determine the defendant's competency.

This court has previously announced three requirements for an effective extension of time for a hearing or trial in a criminal case. Those three requirements are: "(1) that the granting of a continuance *must* be recorded by the trial court in its journal entry; (2) that the journal entry *must* identify the party to whom the continuance is chargeable; and (3) that if the trial court is acting *sua sponte*, the journal entry *must* so indicate and *must* set forth the reasons justifying the continuance." (Emphasis in original.) *State* v. *Geraldo* (1983), 13 Ohio App. 3d 27, 31. While the record before this court does contain journal entries filed in the trial court indicating orders of the trial court that appellant be subjected to psychological evaluation, the journal entries do not clearly reflect that the purpose for the evaluations was to determine the competency of appellant to stand trial. As previously noted, the May 3, 1989 decision of the trial court acknowledges that the earlier journal entries did not reflect that the purpose of psychological evaluations was to determine whether appellant was competent to stand trial. Furthermore, a review of the transcripts of the hearings conducted in appellant's case reveals discussions relating to the desire of appellant's family to see that appellant receive psychological help, but does not reveal any reference by any party, or by the court itself, to a concern that appellant was not competent to stand trial. Because extensions of time for a speedy trial must be strictly construed, there is a need for "* * * reasonably meticulous journal entries and conscientious prosecutorial alacrity ***." *Id.* at 32. The journal entries in the record before this court contain no mention of an extension of time pursuant to 2945.72(B), and contain no specific ruling that appellant was or was not competent to stand trial. Accordingly, this court finds that appellee has failed to meet its burden of proof that the trial was timely. Appellant's sole assignment of error is found not well-taken.

The judgment of the trial court is reversed. Appellant is discharged because his right to a speedy trial was violated. R.C. 2945.73(B); App. R. 12(B). Appellee is ordered to pay the costs of this appeal.

*Judgment reversed.*

PETER M. HANDWORK, P.J.
CHARLES D. ABOOD, J.
Concur.

Prior to his death, JUDGE JOHN J. CONNORS, JR., did participate in the decision-making process of this case.